## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **HYNES, ET AL.,**<br>Plaintiffs,<br><br>v.<br><br>**FORDE & O'MEARA LLP ET AL.,**<br>Defendants. | **CIV. NO.** 23-1140 (SCC-MDM) |

## REPORT AND RECOMMENDATION

Pending before the Court are the defendants' two separate motions to dismiss for lack of personal jurisdiction, and for improper venue, or alternatively, to transfer the action to the U.S. District Court for the Northern District of Illinois, or alternatively, to stay the action until a related *qui tam* case pending in the Circuit Court of Cook County, Illinois is fully resolved. (Docket Nos. 57 & 58).[1] The defendants collectively are comprised of the following individual parties, the Leonard Trial Lawyers, LLC, and Michael I. Leonard, who together comprise the "Leonard Defendants," and Michael K. Forde and Forde & O'Meara LLP, who together comprise the "Forde Defendants." Hereinafter, the Leonard Defendants and the Forde Defendants will together be referred to as the "Defendants." The arguments raised by the Defendants in their respective motions to dismiss are essentially the same so the Court will address them in tandem.

Plaintiffs Brian F. Hynes ("Mr. Hynes"), Vendor Assistance Program, LLC ("VAP"), Blue Stone Finance, LLC ("BSF"), Greysand Finance, LLC ("GSF") (as successor of BSF), and Greysand Capital, LLC ("GC") (as successor of Bluestone Capital Markets, LLC ("BCM")) (BSF and BCM, collectively, are the "Bluestone Entities") (GSF and GC, collectively, are the "Greysand Entities") (all collectively to

---

[1] The Forde Defendants also requested the dismissal of the action alleging that Plaintiffs have failed to state a plausible defamation case against them.

be referred to hereinafter as the "Plaintiffs") jointly filed a consolidated opposition to both motions. (Docket No. 59). Defendants filed a joint reply to Plaintiffs' opposition (Docket No. 66), and Plaintiffs filed a surreply (Docket No. 70).

The matter was referred to me by the presiding district judge for a Report and Recommendation. (Docket No. 71). For the reasons explained below, the Court finds that it lacks personal subject matter jurisdiction over the Defendants and venue is improper in this district. However, because transfer to the U.S. District Court for the Northern District of Illinois would better serve the interests of justice, the Court **RECOMMENDS** that the case be transferred to that district pursuant to 28 U.S.C. § 1406(a), instead of dismissed pursuant to Rules 12(b)(2) and 12(b)(3).

## I.    Legal Standard

### A.    Motion to Dismiss for Lack of Personal Jurisdiction.

"When a court's personal jurisdiction over a defendant is contested, the plaintiff has the ultimate burden of showing by a preponderance of the evidence that jurisdiction exists." *Adams v. Adams*, 601 F.3d 1, 4 (1st Cir. 2010) (citing *Ealing Corp. v. Harrods Ltd.*, 790 F.2d 978, 979 & n.1 (1st Cir. 1986)). "Faced with a motion to dismiss for lack of personal jurisdiction, a district court 'may choose from among several methods for determining whether the plaintiff has met his burden.'" *Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc.*, 825 F.3d 28, 34 (1st Cir. 2016). Under the *prima facie* approach—typically used at the early stages of a case, and where neither party requests an evidentiary hearing, and so the approach the Court adopts here—the district court acts not as a factfinder, but as a data collector and asks only whether the plaintiff has proffered evidence that, if credited, would support all findings of fact "essential to personal jurisdiction," *id.* (quoting *Boit v. Gar-Tec Prods., Inc.*, 967 F.2d 671, 676 (1st Cir. 1992)); *Phillips v. Prairie Eye Ctr.*, 530 F.3d 22, 26 (1st Cir. 2008).

"It is not enough for [the plaintiff] to rely on unsupported allegations in [its] pleadings. Rather, [the plaintiff] must put forward evidence of specific facts to demonstrate that jurisdiction exists." *A Corp. v. All Am. Plumbing, Inc.*, 812 F.3d 54, 58 (1st Cir. 2016) (internal citations and quotations omitted). This showing "must

[therefore] be based upon evidence of specific facts set forth in the record," *Boit* F.2d at 675, and the plaintiff is generally required to present affirmative proof beyond the pleadings. *Id.* So, the plaintiff cannot rely solely on conclusory averments but must "adduce evidence of specific facts." *FosterMiller v. Babcock & Wilcox Can.*, 46 F.3d 138, 144-145 (1st Cir. 1985). In assessing this showing, the court must accept "properly documented" evidentiary proffers as true and give "credence to the plaintiff's version of genuinely contested facts." *Baskin-Robbins*, 825 F.3d at 34. At the same time, the court must consider undisputed facts proffered by the defendant that bear on jurisdiction. *Foster-Miller*, 46 F.3d at 145

"To establish personal jurisdiction in a diversity case, a plaintiff must satisfy both the forum state's long-arm statute and the Due Process Clause of the Fourteenth Amendment." *C.W. Downer & Co. v. Bioriginal Food & Sci. Corp.*, 771 F.3d 59, 65 (1st Cir. 2014).

### B.   Motion to Dismiss for Improper Venue.

Courts considering a challenge to venue under Rule 12(b)(3) follow the same procedures employed for a challenge to personal jurisdiction under Rule 12(b)(2). *Steen Seijo v. Miller*, 425 F. Supp. 2d 194, 198 (D.P.R. 2006). Therefore, as in the context of personal jurisdiction, "[i]t is the plaintiff's burden to demonstrate the existence of every fact required to satisfy [federal venue requirements]." *United Elec. Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp.*, 987 F.2d 39, 44 (1st Cir. 1993) (internal quotation marks omitted), quoted in *United States v. Swiss Am. Bank, Ltd.*, 274 F.3d 610, 619 (1st Cir. 2001).

In deciding a Rule 12(b)(3) motion, the court considers factual allegations in the complaint, but may also consider affidavits. *See U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co., Ltd.*, 16 F. Supp. 2d 326 (S.D.N.Y. 1998). A plaintiff's "well-pleaded allegations in the complaint bearing on the venue question generally are taken as true, unless contradicted by the defendant's affidavits." 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1352, 324 (3d ed. 2004); *see also Pierce v. Shorty Small's of Branson Inc.*, 137 F.3d 1190, 1192 (10th Cir. 1998) (citations omitted) (plaintiff is entitled to rely on the well-pled facts of his complaint,

but "only to the extent that such facts are uncontroverted by defendant's affidavit."). Unsupported allegations in the pleadings need not be credited. *New Life Brokerage Servs., Inc. v. Cal-Surance Assocs., Inc.*, 222 F. Supp. 2d 94, 97 (D. Me. 2002) (citation omitted).

A challenging defendant must bring forward facts sufficient to defeat a plaintiff's assertion of proper venue. *See Pierce*, 137 F.3d at 1192. However, because the plaintiff is obligated to institute proceedings in a permissible forum, after a challenge to venue is raised, the burden ultimately is on the plaintiff to prove that venue is proper. *Transamerica Corp. v. Trans-Am. Leasing Corp.*, 670 F. Supp. 1089, 1090 (D. Mass. 1987).

In diversity cases, venue is proper only in "(1) a judicial district where any defendant resides, if all defendants reside in the same state, (2) a judicial district in which a substantial part of the events . . . giving rise to the claim occurred . . . , or (3) a judicial district in which any defendant is subject to personal jurisdiction . . . , if there is no district in which the action may otherwise be brought." 28 U.S.C. § 1391(a).

If a case is brought in a federal court where venue is improper, the court must either dismiss the case or, if justice so requires, transfer the case to an appropriate venue. 28 U.S.C. § 1406(a); *Optos, Inc. v. Topcon Med. Sys., Inc.*, 2011 WL 841254, at *13 (D. Mass. Mar. 7, 2011). Importantly, even if a defendant alleging improper venue requests dismissal under Rule 12(b)(3), a court may order transfer under Section 1406 if under the circumstances, dismissal would be an "unnecessary and harsh result." *Vázquez v. Jet Blue Airways Corp.*, 2009 WL 3103737, at *5 (D.P.R. Sept. 24, 2009).

C.      Standard under 28 U.S.C. § 1404(a).

Title 28 *United States Code*, Section 1391(a) clearly contemplates that venue for a claim may be proper in multiple fora. But even if the plaintiff's original choice of venue is acceptable under Section 1391(a), a defendant can nonetheless move for transfer under section 1404(a), which provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action

to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).

The decision to transfer pursuant to Section 1404 is within the discretion of the court, *Codex Corp. v. Milgo Elec. Corp.*, 553 F.2d 735, 737 (1st Cir. 1977), and the burden of proving that a transfer is warranted rests with the defendant. *Fairview Mach. & Tool Co., Inc. v. Oakbrook Int'l, Inc.*, 56 F. Supp. 2d 134, 141 (D. Mass. 1999) (internal citation and quotation omitted). A reviewing court must consider several factors, including convenience to the parties and witnesses, the availability of documents, and the interests of justice. *Id.* "Because there is a presumption in favor of the plaintiff's choice [of forum], transfer is not appropriate where its effect is merely to shift the inconvenience from one party to the other." *Kleinerman v. Luxtron Corp.*, 107 F. Supp. 2d 122, 125 (D. Mass. 2000) (citations omitted).

## II. <u>Factual Background</u>

On March 11, 2021, co-defendant Forde & O'Meara LLP filed, under seal,[2] a *qui tam* action in the Circuit Court of Cook County, Illinois, as a relator on behalf of the state of Illinois under the Illinois False Claims Act ("IFCA") (hereinafter the "Whistleblower Case"). (Docket No. 55 ¶ 53). The Forde Firm, an Illinois limited liability partnership, is a law firm with offices only in Illinois whose members are residents and citizens of Illinois. *Id.* at ¶¶8-9. The Leonard Defendants represent the Forde Firm in the Whistleblower Case, which asserts claims against companies associated with Mr. Hynes (the main plaintiff here) under the Illinois False Claims Act ("IFCA") and makes a public allegation of avoidance of Illinois income taxes due to some of the Plaintiffs' alleged involvement in the Illinois Vendor Payment Program ("VPP"). The Forde Firm alleges in the Whistleblower Case that the defendants (some of whom are plaintiffs here) illegally assigned state receivables and are avoiding payment of Illinois state taxes.[3]

---

[2] On April 25, 2022, at the initial Status Hearing, the judge assigned to the Whistleblower Case stated that the complaint would be unsealed but declared the rest of the file would remain under seal. (Docket No. 55 ¶ 56.)

[3] In short, the crux of the complaint in the Whistleblower Case is that VAP purportedly reassigned more than $50 million worth of Qualified Account Receivables to BSF (and to BCM, a

On March 24, 2023, Plaintiffs filed the above-captioned defamation suit. (Docket No. 1). They later filed an amended verified complaint on July 28, 2023. (Docket No. 55) (the "Amended Complaint").[4] Plaintiffs claim that after the Whistleblower Case was filed in the State of Illinois, Defendants have made defamatory statements to the press and through Defendants' colleagues.

More specifically, in the original complaint, Plaintiffs initially alleged that the Defendants' "defamatory conduct" consisted of: (1) "leaking" the "sealed" *qui tam* complaint from the Whistleblower Case—pending in the Circuit Court of Cook County, Illinois—to a reporter in Chicago, Dan Mihalopoulos ("Mr. Mihalopoulos"), and (2) working with Mr. Mihalopoulos on a WBEZ Chicago article that contains allegedly defamatory statements. (Docket No. 1, ¶¶64-70). Mr. Mihalopoulos works for WBEZ Chicago's Government and Politics Team. In the Amended Complaint, however, Plaintiffs removed their allegations concerning any defendant allegedly "leaking sealed court documents."

Plaintiffs' defamation claims are now primarily based on the contention that co-defendant Michael I. Leonard ("Mr. Leonard") gave an interview to the press– namely, WBEZ Chicago–where he discussed the allegations in the Whistleblower Case. (Docket No. 55 at ¶ 65.) On April 4, 2022, WBEZ Chicago published an article online by Mr. Mihalopoulos, which included quotes given by Mr. Leonard in Chicago, Illinois concerning the Whistleblower Case. *Id.* ¶ 66. The article was published in the

---

former Florida limited liability company) while intentionally concealing those assignments from the state of Illinois. Allegedly, this scheme was done to avoid paying Illinois income taxes on said state's payments to VAP of said Qualified Account Receivables. (Docket No. 55 ¶ 60.) The Forde Firm claims that VAP submitted invoices (corresponding to Qualified Account Receivables) to the state of Illinois that were fraudulent because of a lack of required disclosures concerning "assignments" of Qualified Account Receivables to BSF and/or BCM. (Docket No. 55 ¶ 61.) Plaintiffs deny those allegations. *Id*.

    [4] The Amended Complaint alleges the following with respect to Plaintiffs' domicile. (*See* Docket No. 55). Mr. Hynes is a resident of Puerto Rico. He is the founder of VAP and the founder and president of BSF. VAP is an Illinois limited liability company with its principal place of business in Chicago, Illinois. BSF is a Puerto Rico limited liability company with its principal place of business in San Juan, Puerto Rico. GSF is a Puerto Rico limited liability company with its principal place of business in San Juan, Puerto Rico. GS is a Delaware limited liability company with its principal place of business in Winter Park, Florida. (Docket No. 55).

WBEZ Chicago webpage and bore the headline, "A lawsuit alleges a clout-heavy company fraudulently collected millions from Illinois." *Id*. ¶¶ 12 & 66.[5]

Plaintiffs allege that, in the article, Mr. Leonard is quoted as "falsely and recklessly" saying that the defendants in the Whistleblower Case, including VAP and the Bluestone Entities, "are vultures or the proverbial pigs at the trough […] [t]hey're taking advantage of the state's inability to pay and making outrageous profits off that system […] [w]hat they're doing is creating other companies–I would argue shell companies–to take their place in the program, unbeknownst to the state, and then avoid taxation on the millions of dollars they're making from the state program." (Docket No. 55 ¶ 67). According to the Plaintiffs, from the context of the article, it can be reasonably inferred that Mr. Leonard was also referring to Mr. Hynes in the above quotes, that the article focuses on Mr. Hynes and identifies him as the founder of VAP. *Id*. ¶ 68.

Plaintiffs thus allege that the defamatory conduct consisted of "providing court documents to the press" and "providing [Mr. Mihalopoulos] access to documents from the [Whistleblower Case]." (Docket No. 55 ¶¶12, 69, 100). Plaintiffs further claim, inter alia, that Defendants caused and/or are vicariously liable for the publication and/or republication of certain defamatory and slanderous statements allegedly uttered by Mr. Leonard and/or Mr. Forde to WBEZ Chicago reporters, through which they accused Plaintiffs of utilizing some of Mr. Hynes' companies to perpetrate a scheme meant to defraud the State of Illinois. (Docket No. 55 ¶¶12, 80, 85).

As stated in the Amended Complaint, the allegedly "defamatory statements made by Mr. Leonard to the press and through Defendants' colleagues have affected VAP's, Mr. Hynes' and the Bluestone Entities' reputation and business both in Puerto Rico and stateside, that is, in Illinois and other jurisdictions in which Plaintiffs, particularly Mr. Hynes, have business interests." *Id*. ¶64.

---

[5] *See e.g.,* WBEZ Chicago, A Lawsuit Alleges a Clout-Heavy Company Fraudulently Collected Millions from Illinois (April 4, 2022), available on: https://www.wbez.org/stories/company-accused-of-defrauding-state-ofillinois/793c6305-ada1-4d3f-b1ce-e45f9cf1cf62. (Docket No. 55, footnote 2).

Not a single one of the Defendants resides in, conduct business in, or has anything to do with, Puerto Rico.

## III. <u>Discussion</u>

<u>First</u>, the Defendants seek dismissal of the case for lack of personal jurisdiction under Rule 12(b)(2) based upon their allegedly clear ties to Chicago, Illinois, and absence of any contacts with, or connection to, Puerto Rico. More specifically, the Defendants argue the Court lacks personal jurisdiction over them because they: (i) all reside in Chicago, Illinois, (ii) all lack minimum contacts with Puerto Rico, and (iii) would be unduly burdened by litigating in this Court. <u>Second</u>, if the Court declines to dismiss the case on that ground, the Defendants request dismissal based on improper venue under Rule 12(b)(3) and 28 U.S.C. § 1406(a). More specifically, Defendants argue that Plaintiffs' claims of economic harm are the *only* factual connection the Amended Complaint has with the District of Puerto Rico, which is insufficient to meet the required standard for venue to be proper here, and therefore, dismissal is warranted.

<u>Third</u>, if the Court determines that dismissal based on the above is improper, then the Defendants nevertheless request transfer of venue to the United States District Court for the Northern District of Illinois under either 28 U.S.C. § 1406(a), if the Court finds that venue is improper, or under 28 U.S.C. § 1404(a), if the Court finds that venue is proper. According to the Defendants, the Northern District of Illinois has sufficient and continuous contacts with the parties, is convenient for them and their witnesses, and is the proper forum where the case should have been brought in the first place. <u>Lastly</u>, if the Court declines to dismiss or transfer the case, the Defendants request that it be stayed pending the outcome of the Whistleblower Case in the Circuit Court of Cook County, Illinois. The Defendants claim that the outcome of the Whistleblower Case would ultimately determine the outcome of this defamation suit. The Court addresses these arguments in turn.

### A. <u>Personal Jurisdiction.</u>

This case comes to the federal courts through the medium of diversity jurisdiction. *See* 28 U.S.C. § 1332(a). Defendants, who are all residents of Illinois,

move to dismiss this case pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction over them. As noted, the burden of proving that personal jurisdiction may be exercised in the forum state lies squarely with the plaintiff. *See Baskin-Robbins*, 825 F.3d at 34; *Kuan Chen v. United States Sports Acad., Inc.*, 956 F.3d 45, 54 (1st Cir. 2020). When assessing whether personal jurisdiction exists with respect to a non-resident defendant, "a federal court exercising diversity jurisdiction acts as the 'functional equivalent of a state court sitting in the forum state.'" *Kuan Chen*, 956 F.3d at 54 (citing *Baskin-Robbins, Inc.*, 825 F.3d at 34 (2016).

For personal jurisdiction to attach to the Defendants, Plaintiffs here must show that the exercise of personal jurisdiction over Defendants in Puerto Rico would satisfy not only the strictures of the Due Process Clause but also the strictures of the Puerto Rico long-arm statute.[6] *See Kuan Chen*, 956 F.3d at 54 (1st Cir. 2020). Seeing as "the reach of Puerto Rico's long-arm statute is coextensive with the reach of the Due Process Clause," *Carreras v. PMG Collins, LLC*, 660 F.3d 549, 552 (1st Cir. 2011), the Court may proceed to determine whether exercising personal jurisdiction over Defendant "falls within constitutional bounds." *S&S Imports, Inc. v. Cooper Tire & Rubber Company*, Civil No. 20-1064 (JAG), 2021 WL 5570327, at *3 (D.P.R. July 12, 2021).

Under federal law, moreover, personal jurisdiction can exist through two different avenues: specific jurisdiction and general jurisdiction. *See Donatelli v. National Hockey League*, 893 F.2d 459, 462 (1st Cir. 1990). General jurisdiction exists when a claim is not directly based on a defendant's contacts with the forum but rather on said defendant's systematic and continuous activities within said forum. *See Leopoldo Fontanillas, Inc. v. Luis Ayala Colon Sucesores, Inc.*, 283 F. Supp. 2d 579 (D.P.R. 2003). General jurisdiction only applies to those exceptional cases where the defendant is essentially "at home" in the foreign state. *Goodyear Dunlop Tires*

---

[6] Puerto Rico's long arm statute, P.R. Laws. Ann. Tit 32, App. V R. 3.1, states that the General Court of Justice will have jurisdiction over (1) every matter, case or controversy arising within the territorial limits of the Commonwealth of Puerto Rico and (2) persons domiciled in this jurisdiction and over non-domiciled persons who have any contact with the jurisdiction that is consistent with the applicable constitutional provisions.

*Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011). Specific personal jurisdiction, on the other hand, exists "where the cause of action arises directly out of, or relates to, the defendant's forum-based contacts." *United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp.*, 960 F.2d 1080, 1089-91 (1st Cir. 1992).

Satisfaction of either the general or specific personal jurisdiction test is sufficient to establish a court's personal jurisdiction over a defendant. *Daimler AG v. Bauman*, 134 S. Ct. 746, 754 (2014). Satisfaction of neither of the two tests results in Rule 12(b)(2) dismissal.

### 1. *General Jurisdiction*

As noted, general jurisdiction requires that the defendant's contacts within the forum be "so 'continuous and systematic' as to render [the non-resident defendant] essentially at home in the forum State." *See* As *Goodyear Dunlop Tires Operations*, 564 U.S. at 919; *FosterMiller*, 46 F.3d at 144. "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." *Goodyear*, 564 U.S. at 924. It is a much more stringent standard than that required for specific jurisdiction. *See Noonan v. Winston Co.*, 135 F.3d 85, 93 (1st Cir. 1998) (citing *Glater v. Eli Lilly & Co.*, 744 F.2d 213, 216 (1st Cir. 1984)). Its main focus depends first and foremost "on the quality and quantity" of the defendant's in-forum contacts." *Phillips Exeter Academy v. Howard Phillips Fund*, 196 F.3d 284, 288 (1st Cir. 1999) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, (1945)). Thus, "'if the same do not exist in sufficient abundance . . . the inquiry ends.'" (*Donatelli v. Nat'l Hockey League*, 893 F.2d 459, 465 (1st Cir. 1990)).

In the present case, the Court surmises from the pleadings filed by the Plaintiffs, and the arguments made therein, that they understandably make no claim that either defendant is subject to general personal jurisdiction in the District of Puerto Rico. *See e.g., Daimler*, 571 U.S. at 117. Rather, it appears as though Plaintiffs assert specific personal jurisdiction, i.e., jurisdiction over the Defendants for the purpose of this specific lawsuit. *Id*. at 754 (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, (1945)). To the extent, notwithstanding, that Plaintiffs may have

argued that personal general jurisdiction exists over the Defendants, the Court can easily dispose of such an argument. Defendants here are all domiciled in Illinois (not one having any relationship with Puerto Rico) and the alleged "defamatory campaign" against Plaintiffs "are[sic] taking place primarily in Illinois. . . ." (*See* Docket No. 55). Plaintiffs have neither alleged any facts, nor produced any evidence, as is their burden, to show that Defendants' affiliations and contacts with Puerto Rico are so "continuous and systematic" as to render them "at home" in this forum by any means. *See Goodyear*, 564 U.S. at 919.

Accordingly, in the absence of any facts which would support the exercise of general jurisdiction over the Defendants in this case, the Court finds that it lacks general jurisdiction over the Defendants in Puerto Rico and moves on to the specific personal jurisdiction inquiry. *See Daimler*, 571 U.S. at 137.

2. *Specific Jurisdiction*

"Specific jurisdiction allows a court to hear a particular case as long as 'that case relates sufficiently to, or arises from, a significant subset of contacts between the defendant and the forum.'" *Baskin-Robbins*, 825 F.3d at 35 (quoting *Phillips Exeter*, 196 F.3d at 288). *Kuan Chen,* 956 F.3d at 54–55. Thus, for specific jurisdiction to attach to an out-of-forum defendant, the defendant must have "certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *PREP Tours, Inc. v. American Youth Soccer Org*., 913 F.3d 11, 17 (1st Cir. 2019) (citing *Int'l Shoe Co*., 326 U.S. at 316).

To establish such jurisdiction, a plaintiff must show that: (1) their claim arises directly out of or relates to the defendant's forum-state activities; (2) the defendant's contacts with the forum state represent a purposeful availment of the privilege of conducting activities in that state, thus invoking the benefits and protections of that state's laws and rendering the defendant's involuntary presence in that state's courts foreseeable; and (3) the exercise of jurisdiction is ultimately reasonable. *A Corp*., 812 F.3d at 59 (1st Cir. 2016). These three factors are commonly referred to as relatedness, purposeful availment, and reasonableness, respectively. *Daynard v.*

*Ness, Motley, Loadholt, Richardson & Poole, P.A.,* 290 F.3d 42, 50-51, 60 (1st Cir. 2002).

Plaintiff has the burden of proving each prong of specific jurisdiction, for any "failure as to any one of them defenestrates its claim of specific jurisdiction." *Kuan Chen*, 956 F.3d at 59. As such, failure to make any one of these showings dooms any effort to establish specific personal jurisdiction. *See A. Corp*, 812 F.3d at 59; *Scottsdale Cap. Advisors Corp. v. The Deal, LLC,* 887 F.3d 17, 20 (1st Cir. 2018).

In cases involving multiple defendants, "[e]ach defendant's contacts with the forum State must be assessed individually." *Calder v. Jones,* 465 U.S. 783, 790 (1984). Here, Defendants all contend that Plaintiffs have failed to meet their burden on specific personal jurisdiction.

### i.    *Relatedness*

To satisfy the relatedness prong, "the action must directly arise out of the specific contacts between the defendant and the forum state." *See Sawtelle v. Farrell*, 70 F.3d 1381, 1389 (1st Cir.1995). Courts "ask whether the claim that undergirds the litigation directly relates to or arises out of the defendant's contacts with the forum." *Phillips Exeter Academy*, 196 F. 3d at 288. The relatedness test is a relatively flexible and relaxed standard. *Astro-Med, Inc.,* 591 F.3d at 9 (citing *Pritzker*, 42 F.3d at 61). However, it is not "'an open door.'" *Vargas-Santos v. Sam's West, Inc.,* Civil No. 20-1641 (GAG), 2021 WL 4768387, at *4 (D.P.R. Oct. 12, 2021) (citing *Harlow*, 432 F.3d at 61). A plaintiff must show that there exists a "material connection" between the claim and the defendant's forum-state contacts. *Id*.

"Here, plaintiff['s] claims all sound in tort, so to assess relatedness" the Court looks to whether "the plaintiff has established cause in fact (i.e., the injury would not have occurred 'but for' the defendant's forum-state activity) and legal cause (i.e., the defendant's in-state conduct gave birth to the cause of action)." *See Scottsdale Capital Advisors Corp.*, 887 F.3d at 20-21 (1st Cir. 2018). When analyzing specific jurisdiction in a tort claim, the Court must keep the causation element at the "forefront of the due process investigation." *Ticketmaster-New York, Inc. v. Alioto*, 26 F.3d 201, 207 (1st Cir. 1994).

More precisely, in defamation cases, for specific personal jurisdiction to attach over the defendants, plaintiffs have to establish that their suit relates to or arises out of activities that the nonresident defendant purposefully directed toward the forum where the suit was filed. *Walden v. Fiore*, 571 U.S. 277, 284 (2014). In other words, the defendant's suit-related conduct must create a substantial connection with the forum. *Id.* The relationship between defendant, forum and litigation must arise out of contacts that defendant himself created with the forum state. *See id.*, at 283 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. at 475). *See also Calder v. Jones*, 465 U.S. 783 (1984). "Regardless of where a plaintiff lives or works, an injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum state. The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Walden, supra* at 290. In other words, the plaintiff cannot be the only link between the non-resident defendant and the forum. *See Burger King*, 471 U.S. at 478.

In sum, to satisfy the relatedness prong, Plaintiffs here must show a nexus between their alleged defamation claims and the Defendants' forum-based activities. *A Corp.*, 812 F.3d at 59; *Platten v. HG Bermuda Exempted Ltd.*, 437 F.3d 118, 135 (1st Cir. 2006). As such, Plaintiffs must show some nexus between their claims and the Defendants' activities in Puerto Rico such that the Plaintiffs' defamation claims arise out of or relate to the Defendants' contacts with this forum. *Ford Motor Co.*, 141 S. Ct. at 1025. *See also González Cantón v. Mad Ruk Ent., Inc.*, No. CV 22-1458 (CVR), 2023 WL 4546545, at *7 (D.P.R. July 13, 2023).

Against this backdrop, the Court turns to the particulars of the case at hand to answer whether specific jurisdiction exists over the Defendants. The Court begins by analyzing whether Plaintiffs have proffered evidence that would support a finding that their claims arise out of or relate to Defendants' forum-state activities.

In this case, the Amended Complaint alleges that "[b]y making false and slanderous statements, Defendants have caused the publication of" the WBEZ Chicago article, which Plaintiffs argue falsely accuses Mr. Hynes and the Bluestone

Entities, of engaging with VAP in a scheme to defraud the state of Illinois by evading taxes on income derived from the Illinois Vendor Payment Program. (Docket No. 55 at 1-2). As the makers of these false and slanderous statements, Plaintiffs maintain that Defendants are accountable for their foreseeable republication in a news story. *Id*. Plaintiffs further argue that these severe accusations have injured each of the Plaintiffs–not only where they reside (in Mr. Hynes', BSF's and GSF's case, Puerto Rico), but also at a national level." (Docket No. 55, at 1-2). Significantly, the Plaintiffs allege that the "defamatory campaign" against Plaintiffs "are[sic] taking place primarily in Illinois. . . ." *Id*.

In moving to dismiss the Amended Complaint for lack of specific personal jurisdiction, the Leonard Defendants attached to their motion an affidavit executed by co-defendant Mr. Leonard. (*See* Exhibit A, Docket No. 57-1). The affidavit contained a plethora of facts bearing on the jurisdictional inquiry. The affidavit states that Mr. Leonard is the founding and managing partner of Leonard Trial Lawyers, LLC; that Mr. Leonard has been continuously a resident of Cook County, Illinois since 1988; and that he has never resided in Puerto Rico. *Id*. at ¶¶ 2-3. The affidavit further attests that Mr. Leonard has never transacted business in Puerto Rico and has never practiced law in Puerto Rico. Moreover, Mr. Leonard avows that the Leonard Defendants: (a) are located in Cook County, Illinois; (b) have never transacted business in Puerto Rico; (c) have never participated in tortious acts within Puerto Rico; (d) did not purposefully direct any alleged defamatory statements or opinions to anyone within Puerto Rico; and (e) never owned, used, or possessed real property in Puerto Rico. *Id*. at ¶¶ 2-23.

Plaintiffs do not dispute the contents of Mr. Leonard's affidavit either with a dueling affidavit or with any other evidentiary proffer.

Like the Leonard Defendants, in arguing that specific personal jurisdiction does not attach to them in Puerto Rico, the Forde Defendants submitted with their motion an affidavit executed by co-defendant Michael K. Forde ("Forde"). (*See* Exhibit B, Docket No. 58-2). The affidavit states that Forde is a founding and managing partner of the Forde Firm, an Illinois limited liability partnership, with its

place of business in Chicago, Illinois. *Id*. The affidavit also attests that the Forde Firm is a law firm with one office located in Chicago, Illinois, and that all the partners are citizens of Illinois and domiciled in Illinois. (*See id*; Docket No. 55, ¶¶8-9). The Forde Firm has never been incorporated or registered to do business in Puerto Rico. (Docket No. 58-2 at ¶ 10). The Forde Defendants do not provide legal services or transact business in Puerto Rico. (Docket No. 58-2 at ¶12). The Forde Defendants have never had, and do not maintain, rent, lease, or own any office or real property, possessed any professional licenses, or provided or marketed any services in Puerto Rico. *Id*. at ¶13-14. The Forde Defendants do not employ personnel, agents, employees, officers, or directors who conduct business in Puerto Rico. *Id*.

The affidavit further avows that Forde has continuously been a resident of Cook County Illinois since 1996, and at no time has he ever resided in Puerto Rico. *Id*. He has never owned, used, or possessed real property in Puerto Rico. *Id*. at ¶2-4. In the last 15 years, Forde traveled to Puerto Rico only once—on a vacation from December 28, 2021, through January 3, 2022, and at no time has he or the Forde Firm engaged in any relevant conduct within or directly targeting Puerto Rico. *Id*. at ¶23-24.

As stated by Ford, to the best of his knowledge, the statements that are the subject of the Amended Complaint, in which Mr. Leonard is alleged to have expressed his opinions about a *qui tam* lawsuit that was filed and is pending in Cook County, Illinois, were made solely in Cook County, Illinois. *Id*. at ¶21.

Plaintiffs do not challenge the contents of Forde's affidavit either with a responsive affidavit or with any other evidentiary proffer.

The Court finds that the affidavits submitted by both the Leonard Defendants and the Forde Defendants—which were uncontested—show no connection between them and Puerto Rico. Other than a single vacation in Puerto Rico by Forde, which obviously is not related to Plaintiffs' claims, neither the Forde Defendants nor the Leonard Defendants have any contacts whatsoever with Puerto Rico.

Plaintiffs nevertheless argue that Defendants have minimum contacts with this forum because they purportedly issued defamatory and slanderous statements

about the Plaintiffs (in Chicago), which were later published in the WBEZ Chicago online article, and that Defendants directed such defamatory statements to Puerto Rico and its residents. Plaintiffs further contend that since the article was published through the internet, they broadly conclude it was made available in Puerto Rico and all fifty states. Finally, Plaintiffs argue that Defendants' reckless and malicious remarks are the proximate cause of Plaintiffs' damages, the brunt of which were felt in Puerto Rico where plaintiff Hynes and his company reside. Plaintiffs' arguments are unavailing.

The Court begins by identifying any contacts with Puerto Rico, ("since there can be no requisite nexus between the contacts and the cause of action if no contacts exist." *United States v. Swiss Am. Bank, Ltd.,* 274 F.3d 610, 621 (1st Cir.2001); *See also Swanson v. Coffeen*, 952 F. Supp. 2d 390, 395 (D.P.R. 2013). At the outset, the allegedly tortious conduct giving rise to the present action consists of: (1) providing court documents to the press—WBEZ Chicago's Mr. Mihalopoulos—(2) and making false and defamatory statements about the Plaintiffs, which were later quoted in an online article. (Docket No. 55, ¶¶12, 69, 100). It is undisputed that Mr. Leonard, an Illinois-domiciled lawyer, made the statements in question to an Illinois-based journalist for WBEZ Chicago, Mr. Mihalopoulos, in Chicago, Illinois, concerning a matter of public concern in Illinois. The article cited to in the Amended Complaint—and the alleged source of the defamatory statements—was published on the WBEZ Chicago webpage. (Docket No. 55, ¶¶12,67, footnote 2). Defendants proffered uncontested evidence that WBEZ is a Chicago, Illinois' local news station and is part of Chicago Public Media, Inc., which is also located in Chicago. (WBEZ Chicago, Get to know us at WBEZ Chicago, https://www.wbez.org/about - (last visited 8/6/23)).

From the pleadings, and the parties' arguments, it can also be credibly inferred that the allegedly defamatory statements were made in connection with the Whistleblower Case in Chicago, Illinois, a *qui tam* action, where the real party in interest is the State of Illinois, and which pertains to alleged actions by the Plaintiffs purportedly aimed at defrauding the State of Illinois. Mr. Leonard, who made the allegedly defamatory statements, is the legal counsel for the Plaintiffs in the

Whistleblower Case. The case is completely unrelated to Puerto Rico. It also appears from the record that the alleged defamation involves Plaintiffs' business activities in Illinois, *not* in Puerto Rico, despite the fact that some of the Plaintiffs now reside on the island.

Based on the foregoing, none of the relevant events, nor aforementioned contacts, occurred in Puerto Rico, but rather in another jurisdiction of the United States, namely, Chicago, Illinois. Plaintiffs here have failed to allege any facts, or offer evidence, to show that Defendants have any contacts with Puerto Rico, let alone that these contacts give rise to their cause of action for defamation and the Court finds that they do not. There is also no evidence in the record that Defendant's suit-related conduct created a substantial connection with Puerto Rico, nor that the relationship between Defendants, Puerto Rico, and this litigation arises out of contacts that Defendants have created with this forum. *Walden*, 571 U.S. at 283-284 (quoting *Burger King Corp.*, 471 U.S. at 475); *Calder*, 465 U.S. at 783.

Furthermore, though Plaintiffs allege, without proper support, that Defendants aimed the "defamatory campaign" at Puerto Rico, there is no evidence in the record to even infer that Defendants focused the publication on Puerto Rico, nor its residents. A plaintiff must demonstrate the publication was on a website maintained by the defendant (or his agent) or the defendant expressly aimed the publication at the forum state, or the defendant focused the publication on the forum state. *See e.g., Franchini, D.P.M. v. Pipes*, 2019 WL 2163604, at *5 (D. Maine 2019). There is no evidence of that here. As noted, the alleged publication was made by a third-party, unrelated to the Defendants—WBEZ Chicago—and was allegedly published on the WBEZ Chicago's website, and not on any of the Defendants' websites. (Docket No. 55, ¶12).

Plaintiffs have similarly not met their burden to show that the allegedly defamatory publication was "expressly aimed" at the Plaintiff's chosen forum, namely, Puerto Rico. *Calder*, 465 U.S. 789-790. Therefore, Plaintiffs' claims for defamation against the Defendants based on the alleged statements made in the WBEZ publication and its eventual dissemination (which has nothing to do with the

Defendants) cannot be said to "directly arise out of" any of the Defendants' contacts with Puerto Rico. *Sawtelle*, 70 F.3d at 1389. An online article *not* published by the Defendants and purportedly circulated "at a national level," without any other indication of in-forum contact or activity, falls well short of satisfying the relatedness element. *See A Corp.*, 812 F.3d at 60 (1st Cir. 2016).

Additional reasons support the Court's conclusion that no facts exist that could establish a related connection between Defendants' contacts with Puerto Rico and Plaintiffs' claims. To establish "cause in fact" and "legal cause," i.e., the requisite nexus between the defamation claims and the Defendants' forum-based activities, Plaintiff must proffer some evidence permitting the inference that the defamatory material published online reached a third party in Puerto Rico. *See Scottsdale Capital Advisors Corp.*, 887 F.3d at 19-22 (finding no personal jurisdiction over defendants in a defamation case where third parties in the forum had access to an allegedly defamatory article through an online subscriber portal and two of those parties received the article as an email attachment, but evidence showed that no one viewed the article on the portal and the court concluded that number of emails did not permit an inference that either recipient opened attachment). *See Franchini*, No. 18-CV-00477-GZS, 2019 WL 2163604, at *3.

The Amended Complaint alleges, in a conclusory fashion, that the WBEZ article was presumably accessed, viewed, and read by persons in Puerto Rico. It also claims that the story was reported in another media outlet (on www.politico.com) after its initial publication and makes the conclusory statement that "the WBEZ story was retweeted multiple times after its publication, amplifying the reach of Defendants' defamatory remarks." (Docket No. 55 at ¶¶ 74-75.) But a plaintiff cannot rely solely on conclusory averments, he must "adduce evidence of specific facts." *Foster-Miller*, 46 F.3d at 145. Plaintiffs have not proffered any facts, nor evidence, regarding the WBEZ article, its actual dissemination, target audience, or whether anyone in Puerto Rico in fact viewed the article. There is simply no evidence that would permit a reasonable inference that the allegedly defamatory material reached a third party in Puerto Rico making it impossible for Plaintiffs to meet the required

nexus between the defamation claims and the Defendants' forum-based activities. *See Scottsdale Capital Advisors Corp.*, 887 F.3d at 19-22

In this case, moreover, the allegations in the pleadings, though not properly supported, establish only that economic harm—and no other events, omissions, or actions—took place in Puerto Rico. And Plaintiffs did not show that the Defendants had any reason to believe that Plaintiffs would feel the "brunt" of the harm in Puerto Rico or that the publication was "calculated" to cause harm there. *Franchini, D.P.M.*, 2019 WL 2163604, at *6. Indeed, Plaintiffs admit in their Amended Complaint that the alleged defamation occurred "primarily in Illinois," and the alleged injury occurred not only in Puerto Rico, but "also at a national level," including in Illinois. (Docket No. 55, pp. 1-2). Here, the sole connection to Puerto Rico, and why this case was brought in this district by the Plaintiffs, is Mr. Hynes' relocation to the island. Because Mr. Hynes currently resides in Puerto Rico (though he continues to do business in Illinois), he claims that he and some of his companies have suffered damages in this forum as a result of the purportedly defamatory statements made by the Defendants in Chicago, Illinois. But that is not enough. *See A Corp.*, 812 F.3d at 60 (1st Cir. 2016) (holding that an "indirect effect of [an] out-of-state injury caused by [an] out-of-state conduct is insufficient to fulfill the relatedness prong.").

The First Circuit Court of Appeals has further concluded on this matter that "*Calder* 'cannot stand for the broad proposition that a foreign act with foreseeable effects in the forum state always gives rise to specific jurisdiction.'" *Swanson v. Coffeen*, 952 F. Supp. 2d 390, 396 (D.P.R. 2013) (citing *Swiss Am. Bank*, 274 F.3d at 623 (quoting *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000)). "Under *Calder*, in order for jurisdiction to be based *solely* on the in-forum effects of defendant's activity, the plaintiff must show that the defendant acted for the very purpose of causing harmful effects in the forum." *Id.* at 632 (quotations omitted). There is no evidence of that here. Furthermore, the cause of action alleged by Plaintiffs—defamation and libel—occurred in Chicago, Illinois; and some of the alleged subsequent injuries occurred in Puerto Rico. Because only some of the alleged injuries resulting from an alleged tort, and not the tort itself, arose in

Puerto Rico, the Court finds that the contacts Defendants have with Puerto Rico (which are none) are not sufficiently related to Plaintiff's cause of action. *See Swanson*, 952 F. Supp. 2d 390, 396 (D.P.R. 2013).

The norm in the First Circuit has consistently been to reject personal jurisdiction whenever "the connection between the cause of action and the defendant's forum-state contacts seems attenuated and indirect." *Harlow*, 432 F.3d at 61 (quoting *Pleasant St. I*, 960 F.2d at 1089). The Court follows this norm today. *See González Cantón v. Mad Ruk Ent., Inc.*, Civ. No. 22-1458 (CVR), 2023 WL 4546545, at *6 (D.P.R. July 13, 2023).

In sum, the Court finds that there are no contacts between the Defendants and this District that can be gleaned from the record. Nor does the record show that Defendants have any sort of relationship or connection to the island. The record further demonstrates that Defendants are all domiciled and do business in Illinois, and there is no evidence as to Defendants having any contact with, or connection to, Puerto Rico nor of any nexus between the Defendants' "contacts" and Plaintiffs' claims. Plaintiffs have thus failed to satisfy this first relatedness prong of the due-process inquiry. *See United States v. Swiss Am. Bank, Ltd.*, 274 F.3d at 625 (failure to show relatedness ends the inquiry). Though the above is dispositive of the specific jurisdiction inquiry, the Court nevertheless discusses the next factor.

### *ii.* **Purposeful Availment**

On this prong, Plaintiffs contend that Defendants purposefully availed themselves of Puerto Rico jurisdiction insofar as their defamatory and slanderous statements–published by WBEZ Chicago—mentioned Puerto Rico as Plaintiffs' center of operations and activities. (*See* Docket No. 52, ¶ 63; *see also* Docket No. 57-2, ¶¶ 24 (Exhibit B) (stating that "[t]he purpose of creating BSF—and the purpose of chartering it in Puerto Rico—was to reduce the personal income taxes of BSF's members, who are substantially the same as Defendant VAP's members. In other words, the purpose of creating Defendant BSF was to avoid Illinois income taxes by redirecting Defendant VAP's income to a new, non-Illinois corporate entity.").

The requirement of purposeful availment ensures that jurisdiction is not based on merely "random, isolated or fortuitous" contacts with the forum state. *See Sawtelle v. Farrell*, 70 F.3d 1381, 1391 (1st Cir.1995) (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. at 774). Plaintiffs must show that the Defendants purposefully availed themselves of the privilege of conducting activities within Puerto Rico, thus invoking the benefits and protections of Puerto Rico's laws. *See Bluetarp Fin., Inc. v. Matrix Constr. Co.*, 709 F.3d 72, 82 (1st Cir. 2013). The two key focal points of this concept are voluntariness and foreseeability. *See id.*, at 1391 (citing *Ticketmaster–New York, Inc. v. Alioto*, 26 F.3d 201, 207 (1st Cir. 1994)).

For online activity to show the purposeful availment of a forum state necessary to support personal jurisdiction in that state, "something more is necessary." *Brown v. Dash*, No. CV 20-10980-FDS, 2020 WL 6806433, at *1, *12 (D. Mass. Nov. 18, 2020) (quoting *Cossaboon v. Maine Med. Ctr.,* 600 F.3d 25, 35 (1st Cir. 2010)). That "something more" requires evidence that defendants' online actions are aimed at, targeted, specifically communicated with, solicited business in, or mentioned the forum state and its residents. *See id.*

Plaintiffs have failed to satisfy the purposeful availment prong as to either of the Defendants by way of the allegedly defamatory conduct. As discussed, pursuant to the Amended Complaint: "Defendants' defamation has taken place in two forms: (i) by knowingly and maliciously making false statements to the media regarding the involvement of VAP, the Bluestone Entities, and Mr. Hynes in the Vendor Payment Program; and (ii) in support of such statements, providing court documents to the press tied to Defendants' collective ongoing litigation against VAP and the Bluestone Entities, in Illinois. (Docket No. 55 at ¶12).

In the preceding section, the Court has concluded that the record is bereft of any factual allegation, let alone evidence, that Defendants conduct *any* activity in Puerto Rico and that Plaintiffs have not marshalled any facts to establish the requisite minimum contacts or nexus to their claims to establish specific jurisdiction. This alone dooms any attempt to make a showing under the availment prong. "This prong is *only* satisfied when the defendant purposefully and voluntarily directs his

activities toward the forum so that he should expect, by virtue of the benefit he receives, to be subject to the court's jurisdiction based on these contacts." *Swiss Am. Bank*, 274 F.3d at 624. Here, Defendants did nothing to avail themselves of the benefits and privileges of Puerto Rico's laws because there are no contacts at all with this forum (aside Mr. Forde's one isolated vacation to the island). So, it cannot be said that any of the Defendants have, with their allegedly tortious conduct, invoked the benefits or protection of this jurisdiction. Though the above is dispositive of the purposeful availment inquiry, the Court goes further.

The Court also emphasizes that not a single one of the Defendants wrote or published the article in question with the allegedly defamatory or libelous statements. Rather, it is undisputed that a journalist from WBEZ Chicago wrote the article and WBEZ Chicago published it online. In the affidavit submitted by Mr. Leonard, he indicates that the statements that are the subject of the present action, in which he is alleged to have expressed opinions about the Whistleblower Case, were made solely in Cook County, Illinois. (Docket No. 57-1). Mr. Leonard also attests that at no time did he or the Leonard Defendants purposefully direct the WBEZ Chicago article or any of the statements or opinions made therein to anyone within Puerto Rico. *Id.* As noted above, Plaintiffs did not submit a dueling affidavit or any evidence to suggest, or even infer, that the Defendants' allegedly defamatory conduct was aimed or focused on Puerto Rico. Nor have Plaintiffs alleged that the Defendants' alleged defamatory conduct was calculated to intentionally cause injuries to Plaintiffs in Puerto Rico.

Even assuming it was foreseeable that WBEZ Chicago would publish an article on the internet, and such article included allegedly quoted statements from one of the Defendants in Chicago, Plaintiffs have not proffered any facts or evidence to show the article (which, again, the Defendants neither wrote nor published) was aimed directly at, or focused on, Puerto Rico. In fact, Plaintiffs did not proffer the WBEZ Chicago article nor cite to any evidence, beyond "unsupported allegations" in the Amended Complaint, as to the article's substance, medium of publication, or circulation.

*See A Corp.*, 812 F.3d at 58.[7] Thus, on the record before it, the Court cannot conclude that any of the Defendants "expressly aimed" the WBEZ article at Puerto Rico nor knew that it would cause Plaintiffs injury here. *Calder*, 465 U.S. at 789. *See Franchini,* No. 18-CV-00477-GZS, 2019 WL 2163604, at *4.

Based on the foregoing, Plaintiffs have not met the purposeful availment prong as to any of the Defendants.

To conclude the jurisdictional question, Plaintiffs failed to meet their burden of putting forth facts, and offering proof, sufficient to show that Puerto Rico can exercise specific personal jurisdiction over the Defendants without offending due process. *See Scottsdale Capital Advisors Corp.*, 887 F.3d at 20 ("a plaintiff's failure to make any of the three specific personal jurisdiction showings 'dooms any effort to establish' such jurisdiction."). While the Court could proceed with the dismissal of the suit for lack of jurisdiction, it will nonetheless entertain the venue inquiry.

## B.    Venue

In the Amended Complaint, Plaintiffs claim that venue is proper in this district under 28 U.S.C. § 1391 because a substantial part of the damages caused by Defendants' actions were suffered and occurred in this district. Defendants in turn argue that venue is improper in the District of Puerto Rico, therefore, under Rule 12(b)(3) and 28 U.S.C. § 1406(a), the Amended Complaint should be dismissed, or in the alternative, the case transferred.

As noted above, proper venue may exist in multiple fora. In a diversity action, venue is proper (1) where any defendant resides, if all defendants are residents of the same state; (2) where a substantial part of the acts or omissions giving rise to the claim occurred; or (3) where a defendant is subject to personal jurisdiction if neither of the preceding two options applies. 28 U.S.C. § 1391(a). In the First Circuit, the

---

[7] While not required to do so, the Court attempted to access the article using the link cited to by the Plaintiffs in the Amended Complaint, to wit, (WBEZ Chicago, A Lawsuit Alleges a Clout-Heavy Company Fraudulently Collected Millions from Illinois (April 4, 2022), available on: https://www.wbez.org/stories/company-accused-of-defrauding-state-ofillinois/793c6305-ada1-4d3f-b1ce-e45f9cf1cf62), however, the Court could not gain access to the article because to read it, it first required the reader to sign up for "The Rundown" to get unlimited access to WBEZ.org.

plaintiff ultimately bears the burden of proving proper venue. *Cordis Corp. v. Cardiac Pacemakers*, 599 F.2d 1085, 1086 (1st Cir. 1979) (citations omitted).

In this case, proper venue exists in Puerto Rico only if a substantial part of the acts or omissions giving rise to the plaintiff's claim occurred in the District of Puerto Rico. *See* 28 U.S.C. § 1391(a)(2). For purposes of determining venue under the standard of where a substantial part of the events giving rise to the claim occurred, courts look, not to a single "triggering event" prompting the action, but to the entire sequence of events underlying the claim. *Uffner*, 244 F.3d at 42. While the First Circuit has not directly considered the issue, established precedent in other circuits indicates that in defamation claims, economic harm felt within the district is not, standing alone, a "substantial part of the events or omissions" upon which venue can be based. *See Lomanno v. Black*, 285 F. Supp. 2d 637, 642-43 (E.D. Pa. 2003); *Dobrick-Peirce v. Open Options, Inc.*, Civil No. 05-1451, 2006 WL 2089960, at *6 (W.D. Pa July 25, 2006); *Greenblatt v. Gluck*, 265 F. Supp. 2d 346, 352 (S.D.N.Y. 2003). Moreover, our sister courts have held in other contexts that the suffering of economic harm alone is *not* sufficient to establish venue in a district *if no other events or omissions giving rise to or leading up to the claim occurred in the district. See Adamchek v. Costco Wholesale Corp.,* 2008 WL 7536878, at *8 (D. Mass. June 11, 2008). *See GRJG, Inc. v. Sokol*, No. CV 10-1542(DRD), 2011 WL 13319680, at *5 (D.P.R. Sept. 27, 2011).

In this case, Plaintiffs have not met their burden of putting forth facts sufficient to prove that venue is proper in Puerto Rico. The claim arises from alleged defamatory statements made by Mr. Leonard in Chicago, Illinois and later published in an online article by WBEZ Chicago in Chicago, Illinois. This communication, quite clearly, is insufficient to establish venue in Puerto Rico. *See Kamelgard v. Macura*, 585 F.3d 334, 342 (7th Cir. 2009).

Nevertheless, Plaintiffs have also alleged that "[b]ecause it was foreseeable that these false and slanderous statements would be republished and disseminated through the internet by reporters from WBEZ Chicago, Defendants are also liable for republication libel." "(Docket No. 55 at ¶85). Plaintiffs further claim that Mr. "Leonard's statements and defendants' actions have substantially harmed Plaintiffs'

reputation and business relationships not only in Puerto Rico, but also in Illinois and other jurisdictions where Plaintiffs conduct business, subjecting them to significant economic loss." *Id*. at ¶86. "For instance, on April 12, 2022[,] the law firm Fisher Broyles, LLP ("Fisher Broyles"), extended a lucrative offer of partnership to Mr. Hynes, working from Puerto Rico. As per the terms of the offer, Mr. Hynes' expected compensation could have exceeded $1,000,000.00 annually." *Id*. at ¶87. However, on May 6, 2022, Fisher Broyles wrote to Mr. Hynes referencing the WBEZ article, stating "[t]his article was brought to our attention. Can you let us know if this is you? And if so, what happened?" That same day, Fisher Broyles indicated to Hynes that "[w]hile we are interested in seeing you join, we cannot take on a candidate with a pending fraud allegation, however frivolous" and thus withdrew the offer in direct reaction to the WBEZ article. Therefore, because of M. Leonard's statements and Defendants' actions, Fisher Broyles withdrew its partnership offer to Mr. Hynes." *Id*. at ¶88-89.

Furthermore, Plaintiffs contend that "A Fortune 100 Company (the "Fortune 100 Company") that has done business with Plaintiffs and has sold $200,334,728 in Qualified Receivables since 2011 has stopped assigning Qualified Receivables to Qualified Purchaser Trusts managed by VAP and serviced by the Bluestone Entities under their service agreements with VAP, as a reaction to the WBEZ article. On July 22, 2022, Plaintiffs were informed that the "noise" surrounding the lawsuit was the cause. Plaintiffs' annual revenue from this business relationship exceeded $2,000,000.00 per year. *Id*. ¶90. Therefore, M. Leonard's statements and Defendants' actions damaged Plaintiffs insofar as, among other things, they caused the termination of Plaintiffs' business relationship with the aforementioned Fortune 100 Company. *Id*. ¶91.

To start, these allegations are wholly unsupported by the record and, as noted above, unsupported allegations in the pleadings may not be relied upon for the purposes of establishing venue. *See Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*, 142 F.3d 26, 34 (1st Cir. 1998); *see also Boit*, 967 F.2d at 680 ("Even a *prima facie* showing . . . must be based upon specific facts set forth in the record.").

Even if the Court were to credit these allegations as duly supported, in the defamation context, economic damages allegedly suffered by a plaintiff in the district is *not*, *by itself*, a "substantial part of the events or omissions" upon which a plaintiff can root venue. *See Lomanno v. Black*, 285 F. Supp. 2d 637, 642-43 (E.D. Pa. 2003); *Dobrick-Peirce v. Open Options, Inc.*, 2006 WL 2089960, at *6 (W.D. Pa July 25, 2006); *Greenblatt v. Gluck*, 265 F. Supp. 2d 346, 352 (S.D.N.Y. 2003). Courts follow this analysis in other contexts as well. *See Adamchek v. Costco Wholesale Corp.*, 2008 WL 7536878, at *8 (D. Mass. June 11, 2008).

In *GRJG, Inc. v. Sokol,* recognizing that the First Circuit had not addressed the issue, Magistrate Judge Bruce G. McGiverin remarked that "established precedent in other circuits counsels that when considering defamation claims, economic harm felt within a district is not, standing alone, a "substantial event or omission" sufficient to establish venue within that district." *GRJG, Inc. v. Sokol*, 2011 WL 13319679, at *6 (D.P.R. June 21, 2011) (BJM) ("Report and Recommendation"). (citations omitted). Magistrate Judge McGiverin continued to note that: "[D]istrict courts in this circuit have held in other contexts that *suffering economic harm alone is not sufficient to establish venue in a district if no other events or omissions giving rise to or leading up to the claim occurred in the district.*" *GRJG, Inc. v. Sokol*, 2011 WL 13319679, at *6. This reasoning is sound.

Overall, properly supported, uncontroverted allegations in the pleadings only show that economic harm—and no other events, omissions, or actions—took place in Puerto Rico. Like in *GRJG, Inc.*, the sole nexus for venue in Puerto Rico is harm allegedly felt by Plaintiffs in this forum. That, by itself, is insufficient. Economic harm *alone* occurring in a district is *not* a sufficiently substantial event to establish proper venue. *See Adamchek*, 2008 WL 7536878, at *8; *GRJG, Inc. v. Sokol*, 2011 WL 13319680, at *6 (D.P.R. 2011) (Dominguez, J.). *See also* 28 U.S.C. § 1391(a)(2).

Based on the foregoing, the Plaintiffs in this case have not met their burden of bringing forward specific facts to show that venue is proper in the district. *See Cordis Corp.*, 599 F.2d at 1086. The Court must therefore either dismiss the complaint or transfer it to a proper venue. 28 U.S.C. § 1406(a) ("The district court of a district in

which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."). While the decision of whether to transfer an action or dismiss it is within the discretion of the district court, *see Vazquez*, 2009 WL 3103737, at *5, if venue is improper, the court is required to do one or the other.

In the present case, the Court believes that transfer to the United States District Court for the Northern District of Illinois pursuant to 28 U.S.C. § 1406(a) is in the interest of justice. Where, as here, the transferee court clearly would have personal jurisdiction over the Defendants, venue in the transferee court would be proper, and a transfer would save the parties the time and expense of refiling the lawsuit. Thus, the Court finds that a transfer rather than a dismissal is in the interest of justice. *See Capital Bank Int'l Ltd. v. CitiGroup, Inc.*, 276 F. Supp. 2d 72, 78 (D.D.C. 2003).

## IV.    Conclusion

For the foregoing reasons, the undersigned **RECOMMENDS** that the case be transferred to the United States District Court for the Northern District of Illinois pursuant to 28 U.S.C. § 1406(a). Notwithstanding Local Rule 72(d), the presiding judge has modified the time to file objections to this Report and Recommendation to ten (10) calendar days. *See* Local Rule 72(d); 28 U.S.C. § 636(b)(1). Failure to file the same within the specified time waives the right to appeal this Report and Recommendation. *Henley Drilling Co. v. McGee*, 36 F.3d 143, 150-151 (1st Cir. 1994); *United States v. Valencia*, 792 F.2d 4, 6 (1st Cir. 1986).

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this <u>15th</u> day of March 2024.

<u>*s/Marshal D. Morgan*</u>
MARSHAL D. MORGAN
United States Magistrate Judge