UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BRIAN J. HYNES, VENDOR ASSISTANCE PROGRAM, LLC, BLUE STONE FINANCE, LLC, GREYSAND FINANCE LLC, GREYSAND CAPITAL, LLC <br><br> Plaintiffs, <br><br> v. <br><br> FORDE & O'MEARA LLP, MICHAEL K. FORDE, LEONARD TRIAL LAWYERS LLC, MICHAEL I. LEONARD, <br><br> Defendants. | No. 24 CV 2467 <br><br> Judge Georgia N. Alexakis |

MEMORANDUM OPINION AND ORDER

In March 2021, the law firm Forde & O'Meara LLP filed a *qui tam* action in Illinois court under the Illinois False Claims Act, while represented by Leonard Trial Lawyers LLC.[1] Acting as a relator on behalf of the state of Illinois, Forde & O'Meara brought the *qui tam* action against Vendor Assistance Program, LLC ("VAP") and related business entities involved in the Illinois Vendor Payment Program ("the Program"). The *qui tam* action alleged that VAP and the related entities violated the Program's terms and improperly concealed transactions to avoid state taxes.

In March 2023, VAP founder Brian J. Hynes, VAP, and other business entities implicated in the *qui tam* action (collectively, "plaintiffs") brought the instant federal action against Forde & O'Meara; Michael K. Forde, Forde & O'Meara's founding and

---

[1] A *qui tam* action is "a suit in which a private person, generally hoping for a bounty seeks to obtain monetary relief for a government ... to compensate the government for a legal wrong done to it." *Georgakis v. Illinois State Univ.*, 722 F.3d 1075, 1077 (7th Cir. 2013).

managing partner; Leonard Trial Lawyers; and Michael I. Leonard, Leonard Trial Lawyers' founding and managing partner (collectively, "defendants"). Plaintiffs alleged that defendants had engaged in defamation and tortious interference of business expectancy in connection with the *qui tam* action.

Defendants now move to stay the federal proceedings under *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976). For the following reasons, their motions are granted. [101], [107].

I.  **Legal Standards**

Motions seeking abstention under the *Colorado River* doctrine are typically evaluated under the standard used to evaluate motions brought under Federal Rule of Civil Procedure 12(b)(1). *See Heuer v. BMO Harris Bank, N.A.*, No. 23 CV 6153, 2024 WL 3791630, at *2 (N.D. Ill. Aug. 13, 2024); *see also Loughran v. Wells Fargo Bank, N.A.*, No. 19 C 4023, 2019 WL 6349890, at *2 (N.D. Ill. Nov. 27, 2019), *aff'd*, 2 F.4th 640 (7th Cir. 2021). The Court thus accepts as true the well-pleaded allegations in the complaint and draws all inferences in plaintiffs' favor, though it also properly looks beyond the allegations and consider evidence submitted on the issue (*e.g.*, the allegations in the *qui tam* action) to determine if abstention is appropriate. *See St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 625 (7th Cir. 2007); *see also Loughran*, No. 19 C 4023, 2019 WL 6349890, at *2.

"Pursuant to *Colorado River,* a federal court may stay or dismiss a suit in federal court when a concurrent state court case is underway, but only under exceptional circumstances and if it would promote 'wise judicial administration.'" *Freed v. J.P. Morgan Chase Bank, N.A.*, 756 F.3d 1013, 1018 (7th Cir. 2014) (quoting

2

*Colorado River,* 424 U.S. at 817–18). "The primary purpose of the *Colorado River* doctrine is to conserve both state and federal judicial resources and prevent inconsistent results." *Id.*

The doctrine involves a two-part analysis. *Id.* (citation omitted). First, courts must determine whether the federal and state court actions are parallel. *Id.* If they are, courts evaluate ten non-exclusive factors: (1) whether the state has assumed jurisdiction over property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained by the concurrent forums; (5) the source of governing law, state or federal; (6) the adequacy of state-court action to protect the federal plaintiff's rights; (7) the relative progress of state and federal proceedings; (8) the presence or absence of concurrent jurisdiction; (9) the availability of removal; and (10) the vexatious or contrived nature of the federal claim. *Id.* "No one factor is necessarily determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counselling against that exercise is required." *Colorado River*, 424 U.S. at 818–19. The factors are also "a heuristic aid … not a straitjacket. Different considerations may be more pertinent to some cases, and one or more of these factors will be irrelevant in other cases." *Loughran v. Wells Fargo Bank, N.A.*, 2 F.4th 640, 647 (7th Cir. 2021).

## II. Background

Because of issues with delayed payments to vendors, in 2010 the state of Illinois began the Program to pay its bills faster. [89] ¶ 46. The workings of the Program are complex, but for the purpose of the instant motion the broad details are

sufficient. Under the Program, a private company designated as a "Qualified Purchaser" can pay delinquent invoices from vendors on behalf of Illinois, and later receive payment from the state for that invoice. *Id.* ¶¶ 3, 54. An already-existing Illinois law, the Illinois Prompt Payment Act, *see* 30 ILCS 540 *et seq.*, penalized Illinois when it did not pay vendors within 90 days of receiving an invoice, with an interest penalty of 1% of the unpaid amount accruing per month. *See* 30 ILCS 540/3-2(1.05). Under the Program, the Qualified Purchaser receives that penalty interest as consideration for fronting the money. [89] ¶ 55. The Program is thus revenue neutral, at least in theory—the Qualified Purchaser's profit is the penalty that the state would have paid to be vendor anyway—and results in faster payments to the vendors. *Id.* ¶¶ 4–5. The state must approve Qualified Purchasers, and Hynes's company, VAP, which was formed to participate in the Program's pilot, was the sole Qualified Purchaser from 2010–2014. *Id.* ¶¶ 49, 82–83.

Plaintiffs allege that defendants have conspired to defame and tortiously interfere with plaintiffs' business ventures, including by attempting to get VAP removed from the Program. *Id.* ¶ 150. According to plaintiffs, these efforts began in March 11, 2021, when Forde & O'Meara filed a *qui tam* action pursuant to the Illinois False Claims Act in Illinois state court, alleging that VAP had used shell corporations—without making disclosures required by Illinois law—to avoid paying Illinois taxes on money received from the Program. *Id.* ¶¶ 36–37, 172, 180–182. As noted at the outset of this opinion, in the *qui tam* action, Forde & O'Meara (whose founding and managing partner is Forde) was represented by Leonard Trial Lawyers

4

(whose founding and managing partner is Leonard). *Id.* ¶¶ 39–41, 174. The complaint in the *qui tam* action named as defendants several entities that, in effect, represent five of the six plaintiffs in this federal matter: Hynes' company, VAP; Bluestone Capital Markets, LLC (itself a plaintiff in the federal action and also a predecessor to another plaintiff, Greysand Capital, LLC); and Blue Stone Finance LLC (itself a plaintiff in the federal action and also a predecessor to another plaintiff, Greysand Finance, LLC). *Id.* ¶¶ 23, 26, 30, 35, 175.

Aside from the act of filing the *qui tam* action itself, plaintiffs (in the federal action) also maintain that the allegations in the *qui tam* action are false. *Id.* ¶ 183. Moreover, plaintiffs allege that as a direct result of the *qui tam* action and its underlying false allegations, there has been "significant press" that has had "a substantial, negative impact on [their] reputations and current and prospective business prospects." *Id.* ¶ 193. In particular, plaintiffs assert that Forde worked with a reporter at Chicago media outlet WBEZ to "dig up" information on plaintiffs to paint them in a false light in a news article. *Id.* ¶ 154. As part of this undertaking, plaintiffs allege, Forde improperly disclosed sealed court filings from a contract dispute in a Pennsylvania case in which Hynes and other officers of plaintiff business entities were deposed. *Id.* ¶¶ 155–166. Plaintiffs also allege that Forde made statements to the WBEZ reporter that plaintiffs assert to be false and misleading, the gravamen of which were that plaintiffs were "playing a shell game" and defrauding Illinois by routing money from the Program through "sham" companies, with one goal being to avoid paying Illinois income tax. *Id.* ¶ 170.

5

Forde's interactions with the WBEZ reporter led to an April 4, 2022 WBEZ article titled: "A lawsuit alleges a clout-heavy company fraudulently collected millions from Illinois." *Id.* ¶ 202. The article quotes Leonard as describing plaintiffs as "vultures or the proverbial pigs at the trough" who are "taking advantage of the state's inability to pay and making outrageous profits off that system." *Id.* Leonard continued that what plaintiffs were doing was "creating other companies—I would argue shell companies—to take their place in the program, unbeknownst to the state, and then avoid taxation on the millions of dollars they're making from the state program." *Id.* Leonard also appeared on a WGN Radio podcast, where he described "one of these companies" as "collect[ing] millions or tens of millions in late fees and penalties and interest," which cost Illinois "hundreds and millions of dollars more." *Id.* ¶ 206.

According to plaintiffs, this negative publicity resulted in lost business opportunities for them. For example, the law firm Fischer Broyles, LLP, withdrew an offer of partnership to Hynes shortly after the WBEZ article was published, and vendors in the Program stopped using VAP as a Qualified Purchaser. *Id.* ¶¶ 238–246. Plaintiffs allege that their "business took a noticeable nosedive following the [WBEZ article], as the public is reasonably hesitant to engage in business dealings with alleged fraudsters." *Id.* ¶ 252. As a result, in this federal action, plaintiffs have brought state-law claims of defamation (under both *per se* and *per quod* theories), false light invasion of privacy, tortious interference with business expectancy, and civil conspiracy (premised on acts constituting defamation and tortious interference)

6

against defendants Forde and Leonard. *Id.* at 39–61. Plaintiffs have also alleged that defendants Forde & O'Meara and Leonard Trial Lawyers are liable for these torts under a theory of respondeat superior. *Id.* at 61–63.

Meanwhile, the *qui tam* action is still pending in state court. [124] at 2; [115-3]. In August 2024, the first amended *qui tam* complaint was dismissed for failure to state a claim after the state court determined that (1) defendants had not adequately alleged that any false representations were material to Illinois, and (2) the alleged lost tax revenue did not qualify as damages for the purpose of the Illinois False Claim Act. [124-1] at 8–10. But Forde & O'Meara filed a second amended complaint on September 16, 2024, which alleges, among other things, that "VAP … assigned hundreds of millions of dollars of receivables, or interests therein, to third parties without ever disclosing to the State the identity of these third parties or the fact that VAP and the VAP Trusts had made the assignments." [115-3] ¶ 5.[2] The second amended *qui tam* complaint does not mention tax avoidance by VAP or other state-court defendants. The second amended complaint is currently subject to a motion to dismiss in state court. [125-2] at 2.

### III. Analysis

#### A. The State and Federal Actions Are Parallel.

As noted earlier, in evaluating whether *Colorado River* abstention is appropriate, the Court must first determine if the state and federal cases are "parallel"—if they are not, the analysis ends. *Freed*, 756 F.3d at 1018. Cases are

---

[2] Based on the Second Amended Complaint in the *qui tam* action, relator Forde & O'Meara is no longer represented by Leonard and Leonard Trial Lawyers LLC. [115-3] at 21–22.

7

parallel when they involve "substantially the same parties [] contemporaneously litigating substantially the same issues in another forum." *Id.* at 1019 (cleaned up). The cases need not be identical to be parallel; rather, the Court evaluates whether there is "a substantial likelihood that the state litigation will dispose of all claims presented in the federal case." *Id.* at 1018 (cleaned up). *See also Huon v. Johnson & Bell, Ltd.*, 657 F.3d 641, 646 (7th Cir. 2011) ("*Colorado River* abstention … focuses on the [] practical question whether the state case is likely to dispose of the … claims … brought in federal court."). "[A]ny doubt regarding the parallel nature of the [state court] suit should be resolved in favor of exercising jurisdiction." *Freed*, 756 F.3d at 1019 (alterations in original).

The federal and state cases here are parallel. As detailed above, both cases involve substantially the same individuals and entities litigating substantially the same issue: whether Hynes, VAP, and related business entities engaged in fraud in connection with the Program. Plaintiffs here bring a number of claims, but all hinge on whether defendants made false and defamatory statements—including in the *qui tam* action itself—about the occurrence of any such fraud. *See, e.g.,* [89] ¶ 258 (alleging that Forde's statements are defamatory because "they impute that Plaintiffs have engaged and are continuing to engage in the commission of an indictable offense"); *id.* at ¶ 270 (alleging that Forde's statements are defamatory because they "[p]rovide a factual basis from which a reasonable reader may conclude that Plaintiffs took intentional actions for the purpose of defrauding the State of Illinois); *id*. at ¶ 282 (alleging the same, but in the context of the false-light tort); *id.* ¶ 298 (alleging that

8

Forde tortiously interfered with plaintiffs' business expectations by "knowingly and recklessly pursuing the *Qui Tam* Action and advancing theories of liability against Plaintiffs that are without merit"); *see also id.* at ¶¶ 312, 327, 342, 359, 379(a) (making similar allegations against Leonard, individually, and Forde and Leonard, jointly).

"Harmful statements are defamatory only if they are false," *Hnilica v. Rizza Chevrolet, Inc.*, 384 Ill. App. 3d 94, 97 (1st Dist. 2008), so one way the state-court proceeding here might dispose of the defamation and related claims in this federal action is by establishing the truth or falsity of the pertinent statements. In so doing, the state-court proceeding will necessarily shed light on whether the *qui tam* action itself was brought for an improper purpose. To be more precise:

Plaintiffs' defamation (and related) claims against Leonard hinge on two instances: statements Leonard gave to the WBEZ reporter which then appeared in the WBEZ article, and statements Leonard made on a WGN podcast. *See* [89] ¶¶ 202–207; [116] 12–14. In the article, Leonard is quoted as saying the following:

> They are vultures or the proverbial pigs at the trough… They're taking advantage of the state's inability to pay and making outrageous profits off the system. What they're doing is creating other companies—I would argue shell companies—to take their place in the program, unbeknownst to the state, and then avoid taxation on the millions of dollars they're making from the state program.

[108-8] at 2–3. The factual assertions here are (1) that plaintiffs were "taking advantage" of the state; (2) that plaintiffs were doing so by creating "shell companies" to "take their place" in the program; (3) that the state did not know about this; and (4) that plaintiffs are avoiding paying Illinois taxes on their revenue from the

9

Program. On the WGN podcast, Leonard described "one of these companies [participating in the Program]" as "collect[ing] millions or tens of millions in late fees and penalties and interest," which cost Illinois "hundreds and millions of dollars more." [89] ¶¶ 205–206. Leonard also stated that "a Florida company" and "a Puerto Rico company"—which plaintiffs understand to refer to two plaintiff business entities—"funneled" income from the Program "to avoid paying otherwise owed income tax in Illinois." *Id.* ¶ 207.

By comparison, the current *qui tam* complaint involves claims that "VAP … assigned hundreds of millions of dollars of receivables, or interests therein, to third parties without ever disclosing to the State the identity of these third parties or the fact that VAP… had made the assignments" and that, as a result, "the State did not get what it bargained for in allowing VAP … to participate in the Program." [115-3] ¶¶ 5, 7. The *qui tam* complaint further alleges that VAP also "granted to third parties financial interests in VAP itself," and that VAP and other plaintiffs "granted profit participation rights to individuals not disclosed by the state." *Id.* ¶ 41.

As plaintiffs themselves recognize (in the context of the federal action): "whether Plaintiffs in fact engaged in the wrongful actions is objectively verifiable. Evidence will help substantiate whether or not Plaintiffs created companies to defraud the State, avoided taxation, and made a large profit as a result of their misdeeds." [116] at 13. This is also true of the allegations in the *qui tam* complaint. For example, the state court's answer to whether Illinois was aware of the assignments at issue is substantially likely to resolve the truth or falsity of Leonard's

10

statement to WBEZ that VAP was transferring money to other companies "unbeknownst to the state." Because the evidence and issues raised in both cases substantially overlap, the state-court case is thus likely to dispose of the defamation and related claims against Leonard in the federal case. *See Huon*, 657 F.3d at 646. As a result, staying the federal matter will conserve judicial resources and avoid inconsistent findings or results. *See Freed*, 756 F.3d at 1018 ("The primary purpose of the *Colorado River* doctrine is to conserve both state and federal judicial resources and prevent inconsistent results."); *Huon*, 657 F.3d at 647 (in deciding whether a case is "a proper candidate for abstention," "[o]ne important factor is whether both cases would be resolved by examining largely the same evidence"); *DePuy Synthes Sales, Inc. v. OrthoLA, Inc.*, 953 F.3d 469, 478 (7th Cir. 2020) ("[F]unctionally identical suits in two places creates a high risk of inconsistent results and wasteful duplication.").

With respect to defendant Forde, the defamation claims against him hinge on the April 22, 2022 WBEZ article. *See, e.g.*, [89] ¶ 210 ("The Offending Article also repeats and reflects false, defamatory and disparaging statements that Forde had previously published to Mihalopoulos"); [115] at 5 ("Forde knowingly (or recklessly) provided several false and defamatory statements about Plaintiffs to [the WBEZ reporter], who relied on such statements to publish the Offending Article."). Forde did not write the WBEZ article and is not quoted in it, but at this stage the Court accepts plaintiffs' well-pleaded facts as true, and so assumes that Forde "published" the statements at issue by relaying them to the WBEZ reporter. *See Project44, Inc. v. FourKites, Inc.*, 2022 IL App (1st) 210575, ¶ 22 ("[A]n allegedly defamatory statement

11

is 'published' when the defendant communicates that statement to anyone besides the plaintiff.").

The statements Forde made to the WBEZ reporter include the following:

a. VAP, Hynes and/or Plaintiffs in general are playing a shell game and creating separate companies from VAP that are really just paper companies and a sham;

b. VAP and its owners (including Hynes) created two shell corporations, [plaintiffs] BCM and BSF;

c. VAP and its owners (including Hynes) then transferred profits to BCM and BSF to defraud others, including the State of Illinois, into thinking it was dealing with VAP when it was really dealing with the purported shell companies;

d. VAP and its owners (including Hynes) created BSF in Puerto Rico to deprive the State of Illinois of income tax revenue it should have received from VAP's profits;

e. VAP and its owners (including Hynes) created BCM in Florida to deprive the State of Illinois of income tax revenue it should have received from VAP's profits;

…

h. VAP had a contract with the State of Illinois and there is a credible basis to conclude VAP violated the terms of said contract by assigning certain operations and/or revenues to BSF and BCM; [and]

i. Plaintiffs' participation in the VPP equated them to glorified payday lenders;

[89] ¶ 170.

Just as with Leonard's statements, the truth or falsity of Forde's statements overlap significantly with the *qui tam* action. For example, the state-court's resolution whether VAP "assigned hundreds of millions of dollars of receivables … to third parties without ever disclosing to the State the identity of these third parties or

the fact that VAP … had made the assignments," [115-3] ¶ 5, will squarely resolve the truth or falsity of Forde's statement that "VAP violated the terms of [its] contract [with Illinois] by assigning certain operations and/or revenues to BSF and BCM," [89] ¶ 170(h). The state-court case will also likely resolve the precise relationship between VAP and the entities Forde described as "shell companies." [115-3] ¶ 31 ("Starting in 2017, VAP … assigned receivables, or interests in receivables, to a web of privately held companies."). Just as with the claims against Leonard, the state-court case is thus likely to dispose of the federal claims against Forde, meaning abstention would further the goals of preserving judicial resources and avoiding inconsistent findings or results. *See Huon*, 657 F.3d at 646; *Freed*, 756 F.3d at 1018.[3]

---

[3] In reaching this conclusion, the Court has considered defendants' arguments—advanced in their Rule 12(b)(6) motions, [101], [107]—that the federal complaint does not plausibly allege claims for relief, regardless of the truth or falsity of Forde's and Leonard's statements. In particular, defendants argue that the complaint can be dismissed outright on the basis of either absolute litigation privilege or because some of the allegedly defamatory statements are merely "allegations and arguments made in pleadings, motions and other filings." *See* [102] at 6–8; [108] at 2. At this juncture, however, the Court is not convinced that these arguments provide a path for resolving the federal claims that does not intersect with the state-court proceedings. Although Illinois defamation privileges certain statements made by attorneys in litigation, "the scope of absolutely privileged communication is necessarily narrow." *Stein v. Krislov,* 2013 IL App (1st) 113806, ¶ 33. It does not apply, for example, to statements made when the defamation defendant "was not attempting to secure justice for *his* client in a proceeding in which *he participated as counsel.*" *Id.* ¶ 36 (emphasis in original). It is not apparent from the face of the complaint that Leonard's statements—in the article and podcast—were "in a proceeding in which he participated as counsel," so litigation privilege cannot be a basis for dismissal at this time. *See also O'Callaghan v. Satherlie*, 2015 IL App (1st) 142152, ¶ 25 (privileged communications "must be in furtherance of representation"). And Forde's statements to the WBEZ reporter, the basis for the defamation claim against him, were simply not allegations or arguments "made in pleadings, motions, [or] other filings." [108] at 2. They may be based on "the allegations in the court filings in the Pennsylvania Investor Case," *id.*, but this would at most immunize the attorneys in that case, not Forde. And Forde provides no authority indicating that a non-party repeating allegations made in a case is immune to suit under Illinois law.

13

Plaintiffs make two arguments against parallelism, but the Court finds neither persuasive. First, plaintiffs argue that because Forde & O'Meara is merely a relator on behalf of Illinois in the *qui tam* action, none of the defendants "have a recognized interest in the outcome of the state lawsuit." [115] at 16. But the Supreme Court of Illinois has rejected this argument: "The *qui tam* statute [] gives a *qui tam* plaintiff a personal stake in the outcome. ... Accordingly, under the Act, a *qui tam* plaintiff is a real party in interest, together with the state." *Scachitti v. UBS Fin. Servs.*, 215 Ill. 2d 484, 508–09 (2005) (cleaned up). It is true that Forde, Leonard, and Leonard Trial Lawyers are themselves relators in the *qui tam* action, but "the addition of a party or parties to a proceeding, by itself, does not destroy the parallel nature of state and federal proceedings." *Clark v. Lacy*, 376 F.3d 682, 686 (7th Cir. 2004). The key question is "whether the addition of new parties with different interests alters the central issues in the concurrent case." *Loughran*, 2 F.4th at 648; *see also Clark*, 376 F.3d at 686 (suits still parallel because added defendants had "little impact on the overall similarity of the disputes"). Because the defamation claims against Forde, Leonard, and their respective law firms are so intertwined, the inclusion of these additional parties "does not alter the case's central issue." *Clark*, 376 F.3d at 686.

Second, plaintiffs correctly note that the issue of tax avoidance has now dropped out of the *qui tam* complaint and thus contend that the issues being litigated in the two cases are not the same. [115] at 17–18. Defendants respond that "[t]he core issue in the [*qui tam* case] is whether VAP is in compliance with the strict requirements of the [Program]." [124] at 4. Because of this, defendants maintain, the

14

cases are parallel despite the fact that the tax avoidance allegations have dropped out of the second amended *qui tam* complaint.

The Court agrees with defendants. Federal cases do not need to be "*completely* identical" to their state-court counterparts before abstention is appropriate; "perfect symmetry isn't necessary." *See Driftless Area Land Conservancy v. Valcq*, 16 F.4th 508, 526 (7th Cir. 2021). Instead, the cases must be "parallel in all the ways that matter under *Colorado River*," involving the same parties, the same facts, the same issues, and an examination of the same evidence. *Id.* Here, as discussed above, to establish that defendants' statements were false and defamatory, plaintiffs will have to show they complied with the Program's requirements. *See Glob. Relief Found., Inc. v. New York Times Co.*, 390 F.3d 973, 982 (7th Cir. 2004) (plaintiff bears burden of proof on falsity of statements). Indeed, plaintiff's compliance with those requirements is a major focus of their complaint. As defendants note, more than 100 paragraphs of the complaint deal with specific details of the Program's requirements and plaintiffs' compliance with them. [107] at 5; [89] ¶¶ 2–5, 44–149. Likewise, the complaint emphasizes that the alleged falsity of the allegations in the *qui tam* action is a core part of defendants' "campaign to defame and disparage." [89] ¶ 195; *see also id.* ¶ 298 ("Forde also actively participated and took actions in furtherance of Defendants' agreed upon scheme to ruin Plaintiffs' reputation and business opportunities through knowingly or recklessly pursuing the *Qui Tam* Action and advancing theories of liability against Plaintiffs that are without merit."); *id.* ¶ 16 ("Defendants attempted to give credibility to their baseless claims by filing a frivolous *qui tam* lawsuit against

15

Plaintiffs … which they generated significant publicity around by publishing and causing the publication of false statements in the news media to further harm Plaintiffs."). The success or failure of the *qui tam* action thus remains central to the defamation claims, even setting aside the specific allegations regarding tax avoidance.

For these reasons, the Court concludes that the state and federal actions are parallel.

### B. The *Colorado River* Factors Weigh in Favor of a Stay

Because the cases are parallel, the Court next weighs the ten nonexclusive factors. *See Freed*, 756 F.3d at 1018. Defendants concede that factors 1 (state jurisdiction over property), 9 (availability of removal), and 10 (vexatious nature of complaint) are not "applicable." [108] at 9. And as plaintiffs note, "absent or neutral factors weigh in favor of exercising jurisdiction." [115] at 19 (quoting *Huon*, 657 F.3d at 648. Factor 2—inconvenience of the federal forum— is also inapplicable and thus also weighs against abstention; the state court is just down the street.[4]

But the remaining six factors counsel in favor of abstention, and the Court finds they have more weight. Plaintiffs concede that factors 5 (source of governing law) and 8 (concurrent jurisdiction) favor abstention. *See id.* at 22. The issues in both

---

[4] Defendants appear to conflate the inconvenience of the *forum* with inconvenience of *litigation*. *E.g.*, [108] at 10 ("[D]uplicating these efforts in this court makes the federal forum manifestly inconvenient (factor 2).") But the Seventh Circuit has made clear that this factor is about *where* the proceedings are happening, not whether having dual proceedings is inconvenient. *See Freed*, 756 F.3d at 1021–22 ("Since the federal and state cases in this appeal are both pending in Chicago courts, the federal forum is not inconvenient and the second factor weighs against abstention.").

16

cases are issues of Illinois law that the state court undoubtedly has expertise in, and because these are exclusively issues of Illinois state law, there is no problem with the state court exercising jurisdiction.

Plaintiffs argue that factor 6—whether the state-court action protects the federal plaintiffs' rights—favors federal jurisdiction because "there can be no reasonable conclusion that the *Qui Tam* Action pursued by the Forde Defendants as the relator on behalf of the State of Illinois will protect Plaintiffs' interests in their reputations and right to pursue business ventures without tortious interference by Defendants." *Id.* at 21. The Court disagrees. Plaintiffs have given the Court no reason to believe that the state court is inadequate to protect their legal interests in a matter of state law: plaintiffs' compliance with the Program's requirements. Indeed, as plaintiffs note, the state court already dismissed the first amended *qui tam* complaint in its entirety. *Id.* at 18. Because the Court sees no indication the state court will not protect plaintiffs' rights, this factor, too, weighs in favor of abstention.

Similarly, factors 4 (the order in which jurisdiction was obtained) and 7 (relative progress of the proceedings) weigh in favor of abstention. The *qui tam* action was filed on March 11, 2021. [89] ¶ 172. The original complaint in the instant case was filed on March 23, 2023, more than two years later. *See* [1]. Perhaps unsurprisingly, the state-court case has progressed significantly more than the federal case. Defendants assert—and plaintiffs do not dispute—that "a substantial amount of written discovery has taken place." [108] at 10; [115] at 21. Plaintiffs are correct that the state discovery "is not dispositive," [115] at 21, but because much of

17

that discovery it is likely to be duplicative of the discovery required in the instant case (for reasons articulated above regarding the overlapping nature of the state and federal claims), factor 7 weighs in favor of abstention.

Finally, the Court finds that factor 3—avoiding piecemeal litigation—also weighs heavily in favor of the stay. "Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." *Tyrer v. City of South Beloit*, 456 F.3d 744, 755 (7th Cir. 2006) (cleaned up); *see also id.* at 756 ("[T]he danger of piecemeal litigation does not turn on formal identity of issues but on concerns about the efficient use of judicial resources and the public's perception of the legitimacy of judicial authority."). The Court finds that there is a significant risk of piecemeal litigation in the instant case. Both courts are being asked to determine whether plaintiffs complied with the Program's requirements: the state court for the purpose of liability under the Illinois False Claims Act, and this Court for the purpose of determining the truth or falsity of defendants' allegedly defamatory statements and tortious actions. This creates a real possibility that the two courts will resolve legal and factual issues differently, creating a conflict between the two forums. *See id.* at 756. Thus, "allowing the two suits to proceed concurrently would waste the parties' resources [and] risk duplicative rulings." *Id.*

## IV. Conclusion

For the foregoing reasons, the Court finds that the state and federal proceedings are parallel and that the *Colorado River* factors weigh in favor of

18

abstention. Defendants' motions to stay are therefore granted. [101], [107]. Because the Court has determined that a stay is appropriate, it does not reach the merits of defendants' pending motions to dismiss on Rule 12(b)(6) grounds. The Court likewise dismisses plaintiffs' motion for leave to amend the complaint [125] without prejudice to renewal upon resumption of the federal proceedings.

The parties are directed to file a status report with the Court on 4/10/25 indicating the progress of the state-court litigation unless material developments in the state-court proceedings warrant the Court's attention on an earlier date.

ENTERED: 2/10/25

_____
Georgia N. Alexakis
United States District Judge